**Nos. 12-11161 & 12-15457**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————————————

COQUINA INVESTMENTS,

*Plaintiff-Appellee/Cross-Appellant*,

v.

TD BANK, N.A.,

*Defendant-Appellant/Cross-Appellee*.

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

———————————————————

## PETITION FOR REHEARING EN BANC
## OF DEFENDANT-APPELLANT TD BANK, N.A.

———————————————————

Marcos Daniel Jiménez
MCDERMOTT WILL & EMERY LLP
333 Avenue of the Americas, Ste. 4500
Miami, FL 33131
Telephone: (305) 358-3500
Facsimile: (305) 347-6500

Peter J. Covington
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2000
Facsimile: (704) 343-2300

Lawrence S. Robbins
Mark T. Stancil
Joshua S. Bolian
ROBBINS, RUSSELL, ENGLERT, ORSECK,
    UNTEREINER & SAUBER LLP
1801 K Street N.W., Suite 411
Washington, DC 20006
Telephone:  (202) 775-4500
Facsimile:  (202) 775-4510
lrobbins@robbinsrussell.com

*Counsel for Defendant-Appellant
TD Bank, N.A.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1, 26.1-2, 26.1-3, and 35-5(b), Defendant-Appellant TD Bank, N.A. submits this list, which includes the judges in the trial court and all attorneys, persons, associations of persons, firms, partnerships, or corporations having an interest in the outcome of this matter:

1.  Bandstra, Hon. Ted E., Magistrate Judge

2.  Berger Singerman LLP

3.  Berger Singerman, P.A.

4.  Bolian, Joshua S., Counsel for Defendant-Appellant

5.  Bond, Jonathan C., Counsel for Plaintiff-Appellee

6.  BRBJ, Ltd.

7.  Cech Samole, Brigid F., Counsel for Defendant-Appellant

8.  Constance, Bethany

9.  Constance, Mark S.

10. Cooke, Hon. Marcia G., District Judge

11. Coquina Investments, Plaintiff-Appellee

12. Covington, Peter J., Counsel for Defendant-Appellant

13. Damson, Barrie

14. Damson, Joan

15. Damson, N. Blair

Coquina Investments v. TD Bank, N.A.
Case Nos. 12-11161 & 12-15457

16.    Damson, Sarah B.

17.    Dyer, Christina

18.    Dyer, M. Aldo

19.    Estrada, Miguel A., Counsel for Plaintiff-Appellee

20.    Evans, Donna M., Counsel for Defendant-Appellant

21.    Evans, Jason D., Counsel for Defendant-Appellant

22.    Garno, Danielle N., Counsel for Defendant-Appellant

23.    George S. Hawn Properties

24.    Gibson, Dunn & Crutcher LLP

25.    GN Ventures, Ltd.

26.    Goldstein, Glenn E., Counsel for Defendant-Appellant

27.    Greenberg Traurig, LLP

28.    Greenberg Traurig, P.A.

29.    Greer, James H.

30.    GSH 1987 Trust

31.    Hawn, Christina H.

32.    Hawn, George S.

33.    Hewitt, Scott

34.    Hutchinson, Wen, Counsel for Defendant-Appellant

35.    Jennifer Hawn Caldwell 2004 Trust

Coquina Investments v. TD Bank, N.A.
Case Nos. 12-11161 & 12-15457

36.    Jiménez, Marcos Daniel, Counsel for Defendant-Appellant

37.    Jones, Al

38.    Kearney, Dorothy

39.    Kearney, William R.

40.    Keeney, Vicky

41.    Kinghorn, Mark W., Counsel for Defendant-Appellant

42.    Klein, Jenna K.

43.    Klein, Melvyn N.

44.    Lazarus, Bruce

45.    Lazarus, Laura

46.    Mandel & Mandel LLP

47.    Mandel, David Scott, Counsel for Plaintiff-Appellee

48.    Mandel, Nina Stillman, Counsel for Plaintiff-Appellee

49.    Martin, Scott P., Counsel for Plaintiff-Appellee

50.    McDermott Will & Emery LLP

51.    McGuireWoods LLP

52.    Noriega, Camellia, Counsel for Plaintiff-Appellee

53.    Peterson, Jim L.

54.    Pumariega, Audrey, Counsel for Defendant-Appellant

55.    Rabin, Samuel Joseph, Jr., Esq.

Coquina Investments v. TD Bank, N.A.
Case Nos. 12-11161 & 12-15457

56. Robbins, Lawrence S., Counsel for Defendant-Appellant

57. Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP

58. Ross, Ian M., Counsel for Defendant-Appellant

59. Rothstein, Rosenfeldt & Adler, P.A.

60. Rothstein, Scott W.

61. Russell, Donald J., Counsel for Defendant-Appellant

62. Savitz, Jason Brent, Counsel for Plaintiff-Appellee

63. Scherker, Elliot H., Counsel for Defendant-Appellant

64. Schnapp, Mark Paul, Counsel for Defendant-Appellant

65. Singerman, Paul Steven, Esq.

66. Spinosa, Frank

67. Stancil, Mark T., Counsel for Defendant-Appellant

68. Stettin, Herbert, The Honorable

69. Strayman, Jacqueline Klein

70. TD Bank, N.A., Defendant-Appellant

71. TD Bank US Holding Company

72. TD US P&C Holdings, ULC

73. The Toronto-Dominion Bank

74. Wallace, Ben B.

75. Wallace, Patricia H.

Coquina Investments v. TD Bank, N.A.
Case Nos. 12-11161 & 12-15457

76.    Welch, Stephanie

77.    White, Kathleen M.

78.    Woodrum, Teresa

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Defendant-Appellant TD Bank, N.A. makes the following statement as to corporate ownership:

TD Bank, N.A. is a wholly owned indirect subsidiary of The Toronto-Dominion Bank, a publicly traded company in Canada and the United States (NYSE: TD).  TD Bank, N.A. is a wholly owned subsidiary of TD Bank US Holding Company, which is, in turn, a wholly owned subsidiary of TD US P&C Holdings, ULC.  TD US P&C Holdings, ULC is a wholly owned subsidiary of the Toronto-Dominion Bank.

## STATEMENT AS TO BASIS FOR REHEARING EN BANC

Pursuant to Eleventh Circuit Rules 35-5(c) and 35-6, counsel states and certifies as follows:

1.  I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *E.F. Hutton & Co.* v. *Hadley*, 901 F.2d 979 (11th Cir. 1990).

2.  I express a belief, based on a reasoned and studied professional judgment, that this appeal involves the following questions of exceptional importance:

- Whether an entity that invests on behalf of others and has no stake of its own suffers an "injury in fact" sufficient for Article III standing when the investment goes bad—a question on which the panel's decision departs from the law of the Second, Seventh, and Ninth Circuits. The panel's holding, if left uncorrected, would enable investors who decide individually whether and how much to invest to circumvent requirements of individualized proof.

- Whether the Due Process Clause of the Fifth Amendment permits a federal court, following a verdict, to impose sanctions on the losing party based on a "willful" failure to produce certain documents in pretrial discovery where (a) the sanctioned party concededly produced every one of those documents to its outside counsel, (b) outside counsel inexplicably failed to produce those

documents to the opposing party (and yet was held to have acted only "negligently," not "willfully," in so doing), (c) the sanctions were based in part on a finding that the panel held to be clearly erroneous, and (d) both the sanctions, and the underlying "willfulness" finding, pose ongoing, potentially severe regulatory, professional, and litigation consequences for the sanctioned party and its in-house attorneys.

Dated: August 19, 2014                    /s/ Lawrence S. Robbins

                                          ATTORNEY OF RECORD FOR

                                          Defendant-Appellant TD Bank, N.A.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ................................................................C-1

STATEMENT AS TO BASIS FOR REHEARING EN BANC ............................... i

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ...............................................................................1

ISSUES WARRANTING EN BANC CONSIDERATION .......................................3

COURSE OF PROCEEDINGS .................................................................3

STATEMENT OF FACTS .....................................................................4

ARGUMENT ....................................................................................7

I.    THE PANEL'S HOLDING ON ARTICLE III STANDING
      WARRANTS THIS COURT'S EN BANC REVIEW ....................................7

      A.    Standing Is An Important Legal Issue ...................................7

      B.    The Panel's Standing Holding Departs From The Law In This
            Circuit And Elsewhere .......................................................8

      C.    This Case Illustrates The Practical Importance Of Policing
            Article III Standing .........................................................11

II.   THE DISTRICT COURT'S SANCTIONS—IMPOSED POST-
      VERDICT ON ACCOUNT OF PRETRIAL CONDUCT
      COMMITTED BY OUTSIDE COUNSEL—VIOLATE DUE
      PROCESS ........................................................................12

CONCLUSION ..................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC* v. *Nike, Inc.*,
133 S. Ct. 721 (2013) ............................................................8

*BDO Seidman, LLP* v. *Banco Espirito Santo Int'l*,
38 So. 3d 874 (Fla. 3d DCA 2010) ....................................11

*Clapper* v. *Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) .........................................................7

*DaimlerChrysler Corp.* v. *Cuno*,
547 U.S. 332, 126 S. Ct. 1854 (2006) .................................7

* *E.F. Hutton & Co.* v. *Hadley*,
901 F.2d 979 (11th Cir. 1990) ........................................ 9, 10

*Elk Grove Unified Sch. Dist.* v. *Newdow*,
542 U.S. 1, 124 S. Ct. 2301 (2004) .....................................7

*Hollingsworth* v. *Perry*,
133 S. Ct. 2652 (2013) .........................................................8

* *Indemnified Capital Invs., SA.* v. *R.J. O'Brien & Assocs., Inc.*,
12 F.3d 1406 (7th Cir. 1993) .......................................... 9, 10

*Lujan* v. *Defenders of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130 (1992) .................................8

*Pelts & Skins, LLC* v. *Landreneau*,
365 F.3d 423 (5th Cir. 2004) .............................................10

*Raines* v. *Byrd*,
521 U.S. 811, 117 S. Ct. 2312 (1997) .................................7

* *W.R. Huff Asset Mgmt. Co.* v. *Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) ................................................9

*Wash. Legal Found.* v. *Legal Found. of Wash.*,
271 F.3d 835 (9th Cir. 2001) .............................................10

iv

# TABLE OF AUTHORITIES—Cont'd

**Page(s)**

**Statutes & Rules**

Fed. R. App. P. 35(b)(1)(B) ........................................................................11

## INTRODUCTION

The panel's holding flouts a bedrock constitutional rule: A plaintiff must have suffered a concrete, personal injury to have standing. The plaintiff here, a partnership, suffered no such injury. It merely funneled money to and from actual people who suffered actual losses. Yet, the panel held—without citing or discussing a single case on standing (much less any of the contrary authorities cited in Appellant's briefs)—that the partnership had standing because its name and bank account were on the transaction documents.

This error will have profound consequences. It departs from the law of this Court—and of the Second, Seventh, and Ninth Circuits—that investment vehicles that merely aggregate individual investments cannot sue for the losses of those who invested money through them. Those other decisions recognize the important limits Article III places on federal courts' jurisdiction and forbid the use of a nominal plaintiff when it is clear (as it is here on entirely undisputed facts) that the actual injury alleged runs to non-plaintiff individuals. What is more, the panel's holding will have serious practical consequences. Tort cases like this one require individualized proof, such as proof of reliance. The panel's holding dispenses with that requirement by allowing mere intermediaries to sue on behalf of large groups, creating de facto class actions without any of the necessary protections. It is no doubt easier for multiple plaintiffs to try their claims through an entity claiming to

represent their common interest, but expediency is no substitute for constitutional requirements. Indeed, the undisputed facts here are so stark (the plaintiff entity was concededly a mere pass-through for investment decisions made by various individuals) that the panel's decision offers a dangerously attractive roadmap for future plaintiffs hoping to avoid the rigors of proof.

But that is not the end of the matter: The panel also sustained severe discovery sanctions against TD Bank, N.A. ("TD"), even though TD had provided its outside counsel with every single document from which those sanctions arose, and even as the panel *reversed as clearly erroneous* one of the factual findings on which the sanctions were based. The sanctions—imposed on a party that had already sustained an adverse verdict—have potentially severe consequences not only for TD (which faces ongoing regulatory scrutiny and continuing litigation because of those sanctions), but also its in-house attorneys (who were excoriated by the district court based on phantom fact findings and an extraordinary misconception of the role of in-house counsel in contemporary litigation). The panel did not actually find those sanctions to be *correct*—rather, it declined to review the merits of the sanctions because, in its view, those sanctions, when measured against the proof at trial, were at worst harmless error. But post-verdict sanctions—especially ones designed to penalize the sanctioned party *in the future*—should not be assessed retrospectively, as the panel evidently believed. Elemental

due process, not to mention fundamental fairness, warrant en banc review of the sanctions imposed by the district court.

With two constitutional errors at issue, the Court should reconsider the panel's holding en banc.

## ISSUES WARRANTING EN BANC CONSIDERATION

(1)    Whether an entity that invests on behalf of others, makes no decision as an entity whether or how much to invest, and has no financial stake of its own in the investment suffers an "injury in fact" sufficient for Article III standing when the investment goes bad.

(2)    Whether post-verdict discovery sanctions that (a) rest on pretrial discovery derelictions principally committed, not by the sanctioned party, but by its outside counsel, (b) are based in part on findings that have now been *reversed* by the panel, and (c) are predicated on a fundamentally misguided conception of the role of in-house counsel in managing the performance of outside counsel in complex civil litigation, should be vacated under the Due Process Clause.

## COURSE OF PROCEEDINGS

Coquina Investments, a Texas general partnership, sued TD for fraud and related causes of action in the Southern District of Florida. The district court (Cooke, J.) entered partial summary judgment for TD. The remaining claims were tried to a jury, which found for Coquina. TD and Coquina cross-appealed, and, on

3

July 29, 2014, a panel of this Court (Anderson, Gilman, and Johnson, JJ.[1]) affirmed in all respects.

## STATEMENT OF FACTS

Scott Rothstein was a prominent South Florida lawyer who ran a Ponzi scheme. Op. 3.[2] He purported to represent a seemingly endless line of plaintiffs who had won a seemingly endless line of structured settlements. *Ibid.* But his "plaintiffs" wanted their money up front, in a lump sum, even if it meant taking a steep discount. Thus, Rothstein sought investors to pay his "plaintiffs" a discounted lump sum in exchange for the stream of income from the settlement. *Ibid.* The discounts were outlandish; Rothstein offered investors returns of 93.8 to 600 percent with little or no risk of loss. Op. 3, 24 n.14. Not surprisingly, there were no clients and no settlements—Rothstein paid his old investors with funds from new investors, skimming piles of cash off the top in the process. Op. 4.

Rothstein sought investors through word of mouth. One person who caught wind of the investments discussed them with a group of people with whom he had invested before. They each thought the idea was worth pursuing, but no one wanted to put up enough money at first to buy an entire "settlement" from Rothstein.

---

[1]    Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, and Honorable Inge Prytz Johnson, United States District Judge for the Northern District of Alabama, sitting by designation.

[2]    "Op." refers to the slip opinion, attached hereto as Appendix A.

Thus, they pooled their money in an account belonging to a dormant partnership that one of them had used to make different investments. With that pooled money, they bought a single "settlement" from Rothstein. Rothstein made good on his promise (this time), and the group split up the proceeds pro rata according to the amount each had decided to invest. They then bought several more "settlements"—each involving a different cast of friends, family members, and trusts—until Rothstein's Ponzi scheme eventually unraveled.

This case stems from the losses of those investors—but the investors are not the plaintiffs. Rather, the sole plaintiff is Coquina Investments, the hitherto-dormant partnership that an ever-changing subset of the investors used as a vehicle to pool their investments in Rothstein's scheme. Most of those investors were not Coquina partners, and most of Coquina's partners had not invested with Rothstein. See Op. 4. And, whenever Rothstein offered a new "settlement," the investors made their own decisions whether to buy in and were entitled only to their pro rata shares of the profits or losses—Coquina as an entity never made a decision whether or how much to invest with Rothstein. All of these facts are undisputed. Nonetheless, when it came time to sue, the investors asserted that *Coquina* was the

5

victim solely because the contracts with Rothstein and the bank account were in Coquina's name. See Op. 12.[3]

Under this Coquina-is-the-plaintiff theory, only *three* of the group's 31 investors testified at trial. And those three were not a random sample: They were the only three who had any alleged contact with TD, where Rothstein maintained his accounts. Those three maintained that TD had helped Rothstein put a false front on his Ponzi scheme. (So little was TD's purported help that Rothstein had to print fake TD statements and make a fake TD website to dupe potential investors.) The other 28 investors might not have heard about TD at all, or they might not have cared what they heard about TD. Yet they all reaped the benefits of the jury's award against TD without ever proving any element of their individual claims against TD.

TD objected in the district court and on appeal that Coquina lacks standing to recover for the investors' injuries. The panel, however, "disagree[d]." Op. 12. It concluded, in less than one page, that Coquina's nominal presence on the investment documents, bank account, and the bankruptcy settlement sufficed. *Ibid.*

---

[3]    After Rothstein's scheme unraveled, his law firm went into bankruptcy, and the firm's estate threatened to sue Rothstein's investors on various theories. Coquina settled those potential claims, then sought in this case to recover the cost of the settlement from TD. Notably, although the settlement was in Coquina's name (Op. 12), the settlement released the *investors* as well from liability (Op. 5). And Coquina successfully refused TD's requests for discovery regarding where Coquina got the funds to pay for the settlement.

The panel thus squarely held that, although Coquina served solely as a conduit for numerous individuals' investment decisions and passed through all gains and losses, "Article III does not require more." *Ibid.* The panel did not cite or discuss any case addressing standing, much less any of the authorities discussed in TD's brief holding that mere pass-through entities such as Coquina lack standing to sue on claims held by individual investors.

Following trial, the district court considered a series of sanctions motions arising from purported discovery mistakes made by TD and its outside counsel.

## ARGUMENT

## I. THE PANEL'S HOLDING ON ARTICLE III STANDING WARRANTS THIS COURT'S EN BANC REVIEW

### A. Standing Is An Important Legal Issue

Standing is the cornerstone of federal courts' authority to resolve cases. "'[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Clapper* v. *Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332, 341, 126 S. Ct. 1854, 1861 (2006), and *Raines* v. *Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997)). And "'Article III standing'"—the form of standing at issue—"'enforces the Constitution's case-or-controversy requirement.'" *DaimlerChrysler*, 547 U.S. at 342, 126 S. Ct. at 1861 (quoting *Elk Grove Unified Sch. Dist.* v. *Newdow*, 542

7

U.S. 1, 11, 124 S. Ct. 2301, 2308 (2004)). The key requirement of Article III standing, in turn, is that the plaintiff has suffered "'concrete' and 'actual' injury." *Already, LLC* v. *Nike, Inc.*, 133 S. Ct. 721, 730 (2013) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)).

The significance of this threshold issue is not merely theoretical. The Supreme Court, over the past two decades, has devoted substantial attention to defining the proper limits of Article III standing. During that time, the Court has made clear that courts must engage in meaningful analysis of whether the plaintiff has suffered a cognizable injury, rejecting the sort of superficial inquiry offered by the panel here. Indeed, in all of the foregoing cases—*Clapper*, *DaimlerChrysler*, *Raines*, *Elk Grove*, *Already*, and *Lujan*—the Court has held that the plaintiff lacked standing.

### B.    The Panel's Standing Holding Departs From The Law In This Circuit And Elsewhere

The Supreme Court has made clear that merely being associated with an injured person does not suffice for standing. "To have standing, a litigant must seek relief for an injury that affects him in a *personal and individual way*. He must possess a *direct stake* in the outcome of the case." *Hollingsworth* v. *Perry*, 133 S. Ct. 2652, 2662 (2013) (emphasis added) (citation and quotation marks omitted).

Applying this principle to mere investment conduits like Coquina, this Court and its sister circuits repeatedly have held that such entities lack standing. In an

illustrative case from this Court, individuals invested through a Ponzi-scheme investment vehicle. *E.F. Hutton & Co.* v. *Hadley*, 901 F.2d 979, 981 (11th Cir. 1990). When the Ponzi scheme collapsed, the investment vehicle's bankruptcy trustee sued the financial institution where the investment vehicle had bought securities. *Ibid.* This Court held that the people who had invested—not the Ponzi-scheme vehicle through which they had invested (or its bankruptcy trustee)—had standing. That the financial institution "list[ed] the subject securities in [the Ponzi-scheme investment vehicle's] name in its account records [was] irrelevant." *Id.* at 987. So too here: The fact that Rothstein and the individual investors slapped the name "Coquina" on their agreements makes no difference. Rothstein's fraud injured the investors, not Coquina, no matter in whose "name" the agreements and bank accounts were maintained.

Cases from sister circuits are of a piece. An investment advisor argued to the Second Circuit that *it* could sue for securities fraud that had cost its individual clients money. *W.R. Huff Asset Mgmt. Co.* v. *Deloitte & Touche LLP*, 549 F.3d 100, 104 (2d Cir. 2008). The Second Circuit rejected that argument. "[T]he 'injury-in-fact' requirement means that a plaintiff must have personally suffered an injury," but, in that case, "the alleged injury was suffered by [the advisor's] *clients*." *Id.* at 107 (emphasis added). The Second Circuit relied on a Seventh Circuit case with similar facts and a similar holding. See *Indemnified Capital Invs., SA.* v.

9

*R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1409 (7th Cir. 1993) ("[T]he losses incurred by the ICI customer accounts accrued only to ICI's customers and are too attenuated to create standing for ICI."). The Seventh Circuit, in turn, relied on this Court's decision in *E.F. Hutton. Ibid.* (citing 901 F.2d at 985).[4]

Recognizing the same principles, the Ninth Circuit has held that escrow agents lack standing to assert injuries suffered by those who use their services. *Wash. Legal Found.* v. *Legal Found. of Wash.*, 271 F.3d 835, 848-49 (9th Cir. 2001) (en banc). Like an escrow agent, Coquina did nothing more than keep records and execute transactions at the direction of individual investors. Just as an escrow agent cuts a check on behalf of other individuals, Coquina merely funneled individual investors' money to and from Rothstein.

The panel's holding fractures this legal landscape. If allowed to stand, merely having one's name on the account papers will suffice to show standing—the very thing this Court rejected in *E.F. Hutton*, and other courts relying on *E.F. Hutton* have likewise rejected. The panel's holding therefore "conflicts with the authoritative decisions of other United States Courts of Appeals that have ad-

---

[4]    It is irrelevant that the plaintiffs in these cases did not allege that they, personally, were injured. Coquina has alleged that it personally was injured, but its proof has utterly failed to substantiate that allegation. Plaintiffs may not create standing merely by pleading what they cannot prove. *E.g.*, *Pelts & Skins, LLC* v. *Landreneau*, 365 F.3d 423, 427 & n.9 (5th Cir. 2004), vacated on other grounds, 544 U.S. 1058, 125 S. Ct. 2511 (2005).

dressed the issue" and warrants rehearing en banc.    See Fed. R. App. P. 35(b)(1)(B).

Worse still, although TD discussed *E.F. Hutton* and the other cases in its briefs, the panel failed even to mention them.  See Op. 12.  Nor did the panel cite a single case addressing standing.  Thus, if this case is somehow distinguishable from *E.F. Hutton* and its progeny, future litigants and courts will lack any guidance about how to reconcile them.

### C.    This Case Illustrates The Practical Importance Of Policing Article III Standing

Loosening Article III's standing requirement is a problem in its own right, but it also threatens to eviscerate common-law causes of action that assume a personal, concrete injury.  The fraud claims in this case dramatically illustrate this point.  To prove a fraud, plaintiffs must show individual reliance, even if each person received the same misrepresentation.  *BDO Seidman, LLP* v. *Banco Espirito Santo Int'l*, 38 So. 3d 874, 882 (Fla. 3d DCA 2010).  But Coquina proved nothing about the reliance of the 28 investors who did not appear at trial.  The three investors who *did* appear at trial only confirmed that the investors acted individually.  One conceded that Coquina was "not a partnership where there is a managing partner who makes a decision on behalf of all of the partners as to whether or not to invest."  Another rejected the premise that, when he met with Rothstein and TD, he was meeting on behalf of Coquina.  Instead, referring to himself in the third

11

person, he said:  "I was meeting on behalf of Barrie Damson."  Despite all of this, the purported reliance of those three investors was imputed to the remaining 28. "Coquina" thus nullified an element of the cause of action for the vast majority of the investors, demonstrating why standing is so important in practice.

These are undisputed facts, making this case an ideal vehicle to resolve the legal question of standing. TD readily accepts all of the investors' testimony and the documentary evidence about who was injured and how Coquina operated.  The panel simply ignored all of this evidence and held that Coquina's status as a separate entity and its position on the paperwork sufficed.  Thus, however complex the broader facts of this case might be, the standing question is simple:  May an entity that merely passes money from one person to another suffer a personal, concrete injury, as Article III requires?  We respectfully submit that the answer is no.

## II.  THE DISTRICT COURT'S SANCTIONS—IMPOSED POST-VERDICT ON ACCOUNT OF PRETRIAL CONDUCT COMMITTED BY OUTSIDE COUNSEL—VIOLATE DUE PROCESS

Following the verdict, the district court entertained a series of Coquina motions seeking sanctions based on TD's purported failure to produce three categories of documents in pretrial discovery: (a) TD's "Standard Investigative Protocol" ("SIP"), which outlined the steps to be followed in investigating suspicious activity, (b) TD's "Customer Due Diligence" ("CDD") form for Rothstein's law firm, and (c) two email chains between TD employees generated in the weeks after

Rothstein's fraud came to light. D.E. 911 at 23-28.[5] The district court recognized that TD had timely produced all of these documents to outside counsel, and that outside counsel had "negligently" failed to turn them over to Coquina. *Id.* at 7-8, 15, 21-22, 23. Nevertheless, the district court found that TD had "willfully" failed to superintend outside counsel's performance (*id.* at 24)—including by failing to react in the courtroom when a different (and allegedly less damaging) version of the CDD was used by Coquina at trial. The district court therefore imposed two severe sanctions on the bank—including a finding that the entirety of TD's monitoring and alert systems are "unreasonable." *Id.* at 28.

The panel held that the district court had clearly erred in making one of the crucial findings supporting the sanctions—in particular, the finding that "'TD Bank acted willfully in failing to rectify [its outside counsel's] error'" with respect to the CDD. Op. 36-37 (quoting district court opinion). And the panel did not dispute that TD had produced *all* of the pertinent documents to its outside lawyers. Nevertheless, the panel concluded that "any error in the district court's decision to impose the sanction that it chose, or in its predicate finding of willfulness, is harmless." Op. 36. The panel measured the prejudicial impact of the sanctions based on their effect *on the verdict* (which was almost surely unaffected by the absence of

---

[5]   "D.E." refers to entries on the district-court docket, *Coquina Investments* v. *Rothstein*, No. 10-60786-Civ-COOKE/BANDSTRA (S.D. Fla.).

the documents), but disregarded the future consequences of those sanctions for TD and its in-house counsel (although those consequences had been expressly called to the panel's attention, TD Brief 52 n.16 (Nov. 26, 2012); TD Reply Brief 34 n.12 (July 18, 2013)).

That is profoundly wrong: The "choice" of sanctions; the "predicate finding of willfulness"; and the district court's underlying misconception of the role of in-house counsel are anything but "harmless." They are severe, especially when assessed, as they should be, by their future consequences. This is certainly true for TD, which must respond to regulators and opportunistic plaintiffs who read the district court decision. Indeed, TD already faces (and has faced) litigation from an array of plaintiffs who have queued up to capitalize on the district court's decision—including one that sought to undo a settlement based on these putative discovery violations. Amended Motion for Sanctions, *Razorback Funding, LLC* v. *Rothstein*, No. 09-062943(07) (Fla. 17th Cir. Ct. Dec. 10, 2012). Moreover, as a heavily regulated entity, TD must account to its regulators, here and abroad, for the finding that it "willfully" flouted its discovery obligations (a finding that the panel did not endorse but was unwilling to overturn).

Equally troubling, the bank's in-house lawyers must labor for the rest of their careers with the finding—untethered to a single fact in the record—that they are responsible for derelictions in trial preparation and other responsibilities of

14

outside counsel.  D.E. 911 at 26-27.  The district court chided in-house counsel for, among other things, "compartmentaliz[ing]" its attorneys and poorly preparing a witness for his deposition.  *Id.* at 24-27.  But as the panel itself concluded, at least one of the underlying fact findings was clearly erroneous (Op. 36-37), and without that predicate finding, it is highly doubtful that the district court would have found TD to have acted "willfully," or imposed the draconian sanctions that it did.  The panel overlooked the remaining findings, but they are equally indefensible:  As the Association of Corporate Counsel observed as amicus curiae, the district court's holdings "conjured up an impossible standard" for in-house counsel, threatening the teams that manage litigation before all of the courts in this Circuit.  Br. 2 (Dec. 12, 2012).

In the panel's view, these errors are harmless when measured against the proof at trial and the jury's verdict.  See, *e.g.*, Op. 36 n.17.  But for *post-verdict* sanctions—especially ones, as here, that are designed to penalize a litigant *going forward* (D.E. 911 at 28)—such a retrospective conception of harmless error is mistaken.  Measured against their *future* consequences, the district court's choice of sanctions does not satisfy due process.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc.

Dated: August 19, 2014                    Respectfully submitted,

                                          /s/ Lawrence S. Robbins

Marcos Daniel Jiménez                     Lawrence S. Robbins
MCDERMOTT WILL & EMERY LLP                Mark T. Stancil
333 Avenue of the Americas, Ste. 4500     Joshua S. Bolian
Miami, FL 33131                           ROBBINS, RUSSELL, ENGLERT, ORSECK,
Telephone: (305) 358-3500                     UNTEREINER & SAUBER LLP
Facsimile: (305) 347-6500                 1801 K Street N.W., Suite 411
                                          Washington, DC 20006
Peter J. Covington                        Telephone:  (202) 775-4500
MCGUIREWOODS LLP                          Facsimile:  (202) 775-4510
201 North Tryon Street, Suite 3000        lrobbins@robbinsrussell.com
Charlotte, NC 28202
Telephone: (704) 343-2000                 *Counsel for Defendant-Appellant*
Facsimile: (704) 343-2300                 *TD Bank, N.A.*

## CERTIFICATE OF COMPLIANCE

Counsel certifies as follows:

1.    This brief complies with the Eleventh Circuit Rules 35-6 and 40-6 because the length of this brief is 15 pages, excluding the parts of the briefs exempted by Eleventh Circuit Rules 32-4 and 35-6; and

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: August 19, 2014          /s/ Lawrence S. Robbins          
                                Lawrence S. Robbins
                                ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                  UNTEREINER & SAUBER LLP
                                1801 K Street N.W., Suite 411
                                Washington, DC 20006
                                Telephone:  (202) 775-4500
                                Facsimile:  (202) 775-4510
                                lrobbins@robbinsrussell.com

                                *Counsel for Defendant-Appellant*
                                *TD Bank, N.A.*

## CERTIFICATE OF SERVICE

I certify that, on August 19, 2014, I caused fifteen copies of the foregoing Petition for Rehearing En Banc of Defendant-Appellant TD Bank, N.A. ("Petition") to be filed by dispatching to the clerk of court by commercial carrier for overnight delivery.  In addition, I certify that, on August 19, 2014, I caused a true and correct copy of the Petition to be served by commercial carrier for overnight delivery on counsel for Plaintiff-Appellee/Cross-Appellant Coquina Investments:

Miguel A. Estrada
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500
mestrada@gibsondunn.com


Dated: August 19, 2014                    /s/ Lawrence S. Robbins
                                          Lawrence S. Robbins
                                          ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                            UNTEREINER & SAUBER LLP
                                          1801 K Street N.W., Suite 411
                                          Washington, DC 20006
                                          Telephone:  (202) 775-4500
                                          Facsimile:  (202) 775-4510
                                          lrobbins@robbinsrussell.com

                                          *Counsel for Defendant-Appellant
                                          TD Bank, N.A.*

# APPENDIX A

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11161

_____

D.C. Docket No. 0:10-cv-60786-MGC

COQUINA INVESTMENTS,

Plaintiff-Appellee,
Cross-Appellant,

versus

TD BANK, N.A.,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 29, 2014)

Before ANDERSON and GILMAN,* Circuit Judges, and JOHNSON,** District
Judge.

_____

*Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

**Honorable Inge Prytz Johnson, United States District Judge for the Northern District of
Alabama, sitting by designation.

ANDERSON, Circuit Judge:

This case arises out of the billion-dollar Ponzi scheme perpetrated by Scott Rothstein. Plaintiff Coquina Investments ("Coquina") invested with Rothstein and lost over $6.7 million when his scheme collapsed. Defendant TD Bank, N.A. ("TD Bank") was the bank through which Rothstein handled transactions with his investors. Coquina claims that TD Bank made material misrepresentations and took other actions to help Rothstein perpetrate the fraud.

The case was tried before a jury, which returned a verdict for Coquina. The district court subsequently denied TD Bank's renewed motion for judgment as a matter of law and alternative motion for a new trial, to alter and amend judgment, and for remittitur. TD Bank appeals that denial on multiple grounds. It also appeals the district court's post-trial order imposing sanctions for discovery misconduct—i.e., as a sanction, the district court deemed two crucial facts established. Coquina cross-appeals the district court's denial of its motion to amend its complaint to better plead a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. We affirm in all respects.

Case: 12-11161    Date Filed: 07/29/2014    Page: 3 of 41

# I.    BACKGROUND[1]

## A. Rothstein's Ponzi scheme[2]

In 2009, Scott Rothstein, then a prominent South Florida lawyer, purported to represent whistleblowers and victims of sexual harassment. According to Rothstein, the defendants in those cases agreed to pay enormous sums to avoid litigation. To ensure confidentiality, they supposedly entered into "structured settlements" in which they paid large amounts to Rothstein's law firm, Rothstein Rosenfeldt Adler ("RRA"), but required RRA to release the money over time, with the proviso that the victims would forfeit the deferred payments if they breached confidentiality. Some victims, Rothstein claimed, desperately wanted <u>immediate</u> payment and would forgo a large portion of the settlement to get it. On that pretext, Rothstein asked wealthy investors to finance immediate payments to victims of a <u>fraction</u> of the settlement in exchange for receiving the <u>entire</u> settlement in very quick installments. Rothstein assured his investors that the defendants had already deposited the full amount of the settlements in TD Bank trust accounts that RRA administered, so there was little or no risk of loss in the

---

[1]    This appeal comes to us following a long and complicated history, including a trial that lasted for over two months. We summarize the relevant facts and procedural history here, with more detail to follow as necessary to our analysis of the issues presented on appeal.

[2]    "A Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors." <u>Wiand v. Lee</u>, 753 F.3d 1194, 1201 (11th Cir. 2014).

investments that he offered.  In reality, the clients, defendants, and settlements were all fictitious; Rothstein used the money provided by new investors to repay old investors and to finance an elaborate lifestyle.

Coquina is a Texas investment partnership.  Partners and non-partners can apparently contribute capital to Coquina, which invests the capital in its own name and divides the profits in proportion to each investor's contribution.  Between April and October 2009, Coquina invested $37.7 million with Rothstein.  Coquina lost around $6.7 million when Rothstein's Ponzi scheme collapsed in late October 2009.

To convince Coquina to make multi-million dollar investments, Rothstein promised Coquina that the settlement money allegedly deposited by settling defendants could be held in a TD Bank trust account that contained heightened transfer restrictions.  Rothstein sent Coquina so-called "lock letters" signed by TD Bank's then-regional vice president Frank Spinosa, which claimed that the funds in the trust account could be disbursed only to Coquina.  That claim was false: Rothstein was able to transfer funds to himself from that account and did so on occasion.  Further, according to Coquina's version of the events, Spinosa falsely assured Coquina's investors that the restriction described in the "lock letters" was effective and commonplace at TD Bank.  Spinosa also allegedly told the investors

that there were millions of dollars in the restricted account when in fact there was only $100 in the account at the time.

B. <u>The settlement agreement</u>

In November 2009, shortly after Rothstein's Ponzi scheme was discovered, creditors of RRA petitioned the Bankruptcy Court for the Southern District of Florida to reorganize the law firm under Chapter 11 of the Bankruptcy Code. On May 5, 2010, the appointed bankruptcy trustee ("the Trustee") sent Coquina a demand letter asserting claims against Coquina for avoidable transfers; the essence of the Trustee's claims against Coquina was to "claw back" the "return on investment" that Rothstein had previously distributed to Coquina. Coquina settled with the Trustee shortly before the trial in this case.

Under the settlement, Coquina agreed to immediately return $12.5 million to the RRA estate. Moreover, if Coquina prevailed in this case against TD Bank, the estate would receive a portion of Coquina's recovery—up to a maximum of $18.6 million. In return, the Trustee agreed to release any claims he might have against Coquina and its agents, partners, and related individuals or entities. The Trustee further agreed that Coquina would be allowed a general unsecured claim in the bankruptcy case for the amounts paid pursuant to the settlement.

As relevant to this appeal, the settlement agreement also contained the following recital:

[A]s a material inducement to entering into this Settlement, Coquina and its counsel have represented to the Trustee and his counsel that neither Coquina, nor its partners, [nor] investors . . . had any knowledge of the Rothstein Ponzi scheme . . . and that, as of the date of this Settlement Agreement, the Trustee has no knowledge to the contrary nor any indication of Coquina's knowledge of or complicity in or with the Rothstein Ponzi scheme.

## C. Proceedings before the district court

Coquina filed this lawsuit against TD Bank on May 12, 2010, alleging that the bank aided and abetted Rothstein's Ponzi scheme, made fraudulent misrepresentations, and engaged in a pattern of racketeering activity in violation of RICO.[3] The district court granted summary judgment in favor of TD Bank on the RICO claim and denied Coquina's request to amend. The aiding and abetting and fraudulent misrepresentation claims went to trial.

This appeal primarily concerns three rulings made by the district court at trial. First, the court allowed Spinosa to be called to testify even though he had decided to invoke his Fifth Amendment privilege against self-incrimination in response to all substantive questions. The district court further instructed the jury that it could, but was not required to, draw adverse inferences against TD Bank from Spinosa's silence, and that it could, in conjunction with other evidence that was presented, consider Spinosa's silence in determining TD Bank's liability.

---

[3]    Rothstein was also named as a defendant in the complaint. The district court entered default—but not default judgment—against him on November 8, 2010, and he is not a party to this appeal.

6

Second, the district court admitted into evidence, over TD Bank's hearsay objection, the settlement agreement between Coquina and the Trustee, including the recital quoted above that Coquina had represented to the Trustee that it did not know about Rothstein's fraud and that the Trustee knew of no information that would indicate otherwise. Coquina then used the recital for the truth of the matter asserted; that is, in its rebuttal at closing, Coquina used the recital as substantive evidence to counter TD Bank's defense that Coquina's investors knew or should have known that Rothstein's venture was fraudulent.

And third, the district court ruled that Coquina could claim as damages the amount that it paid—and will pay if it prevails in this case—in settlement to the RRA estate because the amount was reasonable and attributable to TD Bank's alleged misconduct.

The jury returned a verdict in favor of Coquina on both the aiding and abetting and the fraudulent misrepresentation claims. For each claim, the jury awarded Coquina $16 million in compensatory damages and $17.5 million in punitive damages. Thus, the total compensatory damages award was $32 million, of which approximately $7 million represented Coquina's actual loss from the Ponzi scheme ($6.7 million plus interest), and the remaining $25 million represented the sum of the $12.5 million that Coquina had already paid in settlement to the Trustee and the amount (another $12.5 million) that the Trustee is

entitled to receive under the settlement from Coquina's recovery in this case.[4]  The

total damages award was $67 million.  The district court subsequently denied TD

Bank's renewed motion for judgment as a matter of law and alternative motion for

a new trial, to alter and amend judgment, and for remittitur.

D. Post-trial discovery sanctions

Multiple problems with TD Bank's discovery came to light during and after

the trial.  For example:[5]

1) TD Bank's Federal Rule of Civil Procedure 30(b)(6) designee testified before

trial that there were no anti-money laundering ("AML") alerts for Rothstein's

bank accounts until late September 2009 and less than five thereafter.  But

weeks before trial, TD Bank produced around 150 pages of AML alerts for

Rothstein's accounts; TD Bank then produced more AML alerts, including

alerts spanning 2008 to 2009, after trial commenced.

---

[4]      Coquina was clear as to the amounts it asked the jury to award.  It explained to the jury
that it was "in the hole $20.5 million" at the time of trial because of its actual loss of $6.7
million, plus interest, and the $12.5 million settlement payment it had made to the Trustee.
Coquina then explained to the jury that of the amount it sought, around $32.8 million, it would
keep $20.5 million, and the remaining $12.5 million would go to the Trustee pursuant to the
settlement agreement.  In other words, the $32.8 million would "mak[e] Coquina whole," and the
Trustee "w[ould] get another [$]12.5 million dollars, on top of the [$]12.5 [million] that Coquina
ha[d] already paid him," pursuant to the settlement.  Thus, the total amount Coquina would pay
in connection with the settlement (i.e., the amount "clawed back" by the Trustee) would be
around $25 million.

[5]      Those seeking a more detailed account should see the district court's order on the
motions for sanctions.  Coquina Invs. v. Rothstein, No. 10-60786-Civ, 2012 WL 3202273 (S.D.
Fla. Aug. 3, 2012).

2) Two TD Bank employees submitted affidavits during trial denying the existence of a document entitled the "Standard Investigative Protocol" ("SIP"), which outlined investigatory steps that employees must take whenever an account alerts. TD Bank confirmed post-trial that this protocol in fact exists. Moreover, the two employees who submitted the affidavits could have found the protocol by searching the relevant shared drive on their computers or, in the case of one employee, by reviewing his e-mails.

3) One of the documents TD Bank produced during discovery was a Customer Due Diligence ("CDD") form for RRA's bank accounts. The original CDD contained a red banner running across the top of the page with the words "HIGH RISK" in white, capital letters. The form produced to Coquina, however, did not contain a discernible "HIGH RISK" banner.

4) Two e-mail chains between TD Bank employees containing information relevant to whether Spinosa had signed and issued the "lock letters" described earlier were never produced to Coquina.

5) A consultant's report on Rothstein's accounts, which was created for an unrelated matter after discovery in this case had closed, was never produced to Coquina or to TD Bank's former outside counsel, Greenberg Traurig LLP.

Coquina moved post-trial for sanctions against TD Bank and Greenberg Traurig based on these alleged discovery violations, which the district court

Case: 12-11161    Document: 179    Date Filed: 07/29/2014    Page: 40 of 41

granted.  The court noted that TD Bank had made most of the documents at issue available to Greenberg Traurig, which failed to properly produce them to Coquina.  But the court also found, <u>inter alia</u>, that TD Bank willfully failed to correct Greenberg Traurig's mistakes as to the production of the CDD, that TD Bank willfully concealed documents from Greenberg Traurig, that TD Bank's employees failed to adequately search for the SIP before signing affidavits denying the protocol's existence, and that TD Bank's Rule 30(b)(6) witness was, at best, unprepared.  Based on these findings, the court concluded that Greenberg Traurig acted negligently and that TD Bank acted willfully in failing to comply with discovery orders.  Accordingly, the court entered an order under Federal Rule of Civil Procedure 37(b)(2)(A)(i) that two facts—that TD Bank's monitoring and alert systems were unreasonable and that TD Bank had actual knowledge of Rothstein's fraud—would be taken as established for purposes of this action.  The court also ordered TD Bank and Greenberg Traurig to pay Coquina's attorney's fees associated with litigating the sanctions and other related motions.

## II.    DISCUSSION[6]

A. <u>Standing</u>

TD Bank contends that Coquina lacks constitutional standing to maintain

this suit.[7]  Specifically, TD Bank argues that Coquina has not suffered any injury-

---

[6]     We raise the question, <u>sua sponte</u>, of whether we have jurisdiction over TD Bank's appeal from the judgment against it and from the district court's sanctions order.  We conclude that we do.  Our decision in <u>Arango v. Guzman Travel Advisors</u>, 761 F.2d 1527, 1531 (11th Cir. 1985), governs our resolution of the first question, and it demonstrates that the absence of a default judgment against Rothstein, <u>see supra</u> note 3, does not require dismissal of TD Bank's appeal from the judgment against it under the circumstances of this case.  However, following the lead of <u>Arango</u>, we instruct the district court to take the appropriate action in entering final judgment to resolve Coquina's claims against Rothstein when this case is returned to the district court.  <u>See</u> 761 F.2d at 1531, 1538.

       We also conclude that we have jurisdiction over the appeal of the order imposing sanctions on TD Bank.  We need not decide whether the sanctions order itself (which awarded attorney's fees but did not determine the amount of the fees) constitutes a final, appealable decision.  <u>See</u> <u>Jaffe v. Sundowner Props., Inc.</u>, 808 F.2d 1425, 1426–27 (11th Cir. 1987) (holding that "[b]ecause the amount of attorney's fees has not yet been fixed, the [Rule 37 sanctions] order appealed from is not a final judgment"); <u>Santini v. Cleveland Clinic Fla.</u>, 232 F.3d 823, 825 n.1 (11th Cir. 2000) (same).  <u>But see</u> <u>Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs</u>, ____ U.S. ____, ____, 134 S. Ct. 773, 777, 780 (2014) (holding that "the pendency of a ruling on an award for fees and costs does not prevent . . . the merits judgment from becoming final for purposes of appeal" even when "the statutory or decisional law authorizing [the] particular fee claim treat[s] the fees as part of the merits"); <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 202, 108 S. Ct. 1717, 1722 (1988) (holding that "an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final").  Even assuming, <u>arguendo</u>, that the sanctions order is not itself appealable, we conclude that we have pendent jurisdiction over it because the sanction imposed in this case deems as established two factual allegations that are "inextricably intertwined" with the judgment on the merits against TD Bank.  <u>See</u> <u>Fox v. Tyson Foods, Inc.</u>, 519 F.3d 1298, 1302 (11th Cir. 2008) (explaining that "[u]nder the doctrine of pendent appellate jurisdiction, a federal appellate court may address nonappealable orders if they are inextricably intertwined with an appealable decision or if review of the former decision is necessary to ensure meaningful review of the latter" (internal quotation marks omitted)).

[7]     "We review issues of standing <u>de novo</u>."  <u>Arcia v. Fla. Sec'y of State</u>, 746 F.3d 1273, 1278 (11th Cir. 2014) (internal quotation marks omitted).

Case: 12-11161    Document: 179    Date Filed: 07/29/2014    Page: 42 of 41

in-fact because Coquina acted merely as a passive conduit for passing money from its own investors to Rothstein and vice versa.  We disagree.

Coquina is an investment partnership and is recognized under both Texas and Florida law as an entity legally distinct from its partners.  See In re Allcat Claims Serv., L.P., 356 S.W.3d 455, 463–64 (Tex. 2011); Larmoyeux v. Montgomery, 963 So. 2d 813, 819 (Fla. Dist. Ct. App. 2007).  Coquina invested with Rothstein in its own name, not in the names of its investors; the investment documents designated "Coquina Investments" as the entity entitled to repayment; and Coquina paid for the investments with funds from its own bank account.  Therefore, Coquina acquired a right to the returns that Rothstein promised and suffered an economic loss when the returns failed to materialize.

Coquina was also injured as a result of its potential liability to the Trustee for avoidable transfers and its settlement with the Trustee in connection therewith.  The settlement expressly defined the parties to the agreement as the Trustee and "Coquina Investments," and the settlement payments were made from "a Coquina account."  Article III does not require more.

Having thus disposed of the preliminary matter of standing, we turn to the merits.

B. Evidentiary rulings

TD Bank argues that the district court made several evidentiary errors that require a new trial.  We review a district court's evidentiary rulings for an abuse of discretion.  Collins v. Marriott Int'l, Inc., 749 F.3d 951, 959 (11th Cir. 2014).  In order to justify granting a new trial, an error must have affected "substantial rights" or caused "substantial prejudice"; otherwise, the error is harmless.  Id.; Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004).

### 1.  *Testimony of Frank Spinosa*

TD Bank raises two arguments regarding the testimony of its former regional vice president, Frank Spinosa.  First, it contends that the district court erred in allowing Coquina to call Spinosa as a witness even though Spinosa had made it known that he would invoke his Fifth Amendment privilege against self-incrimination.  Second, TD Bank avers that the district court compounded its error by permitting Coquina to ask Spinosa questions that were not corroborated by independent evidence in the record and by permitting the jury to draw adverse inferences against TD Bank from Spinosa's refusal to answer those questions.  Both arguments fail.[8]

---

[8]      TD Bank also ascribes error to the jury instruction concerning Spinosa's Fifth Amendment invocations.  We summarily reject this argument.  We have repeatedly said that "[w]hen the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism."  State Farm Fire & Cas. Co. v. Silver Star Health & Rehab., 739 F.3d 579, 585 (11th Cir. 2013) (internal quotation marks omitted).  In any event, for the reasons we give in

a. *Did the district court err in allowing Coquina to call Spinosa as a witness?*

The Fifth Amendment privilege against compelled self-incrimination operates differently in criminal and civil contexts. The ordinary rule in a criminal case is that no negative inference from the accused's silence is permitted. See Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233 (1965). In civil cases, however, the Supreme Court has said that "the Fifth Amendment does not forbid adverse inferences against parties . . . when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558 (1976). "Th[is] rule allowing invocation of the privilege [by civil litigants], though at the risk of suffering an adverse inference or even a default, accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed." Mitchell v. United States, 526 U.S. 314, 328, 119 S. Ct. 1307, 1315 (1999).

Spinosa's status as a nonparty witness, rather than a litigant, adds a wrinkle that has not been considered by either the Supreme Court or this court. When a party remains silent in the face of accusation, his silence is indicative of the reliability of the adverse inference drawn against him "if it would have been

---

Part II.B.1.b, infra, even if the instruction misstated the law by allowing the jury to draw adverse inferences based upon a few questions for which there was no independent corroborating evidence in the record, this error is harmless. Fid. Interior Constr., Inc. v. Se. Carpenters Reg'l Council of United Bhd. of Carpenters & Joiners of Am., 675 F.3d 1250, 1259 (11th Cir. 2012) ("Jury instructions are subject to harmless error review" (internal quotation marks omitted)).

natural under the circumstances to object to the [accusation] in question." Baxter, 425 U.S. at 319, 96 S. Ct. at 1558 (internal quotation marks omitted). However, a nonparty witness like Spinosa may invoke the privilege for a variety of reasons that are unrelated to the possibility of self-incrimination; for instance, a nonparty may purposefully choose not to contradict incriminating evidence in order to "saddle a defendant with liability by insinuation, particularly where the chance of prosecution of the witness is slim." Charles H. Rabon, Jr., Note, Evening the Odds in Civil Litigation: A Proposed Methodology for Using Adverse Inferences When Nonparty Witnesses Invoke the Fifth Amendment, 42 Vand. L. Rev. 507, 534 n.189 (1989); F.D.I.C. v. Fid. & Deposit Co. of Md., 45 F.3d 969, 978 (5th Cir. 1995) ("The concern is that a non-party who stands in no special relationship to the party at the time of trial may purposefully invoke the privilege solely to discredit the party."). Because the witness cannot be made to explain why the privilege has been invoked, the reliability of the adverse inference drawn from his silence is limited. Cf. Brink's Inc. v. City of New York, 717 F.2d 700, 716–17 (2d Cir. 1983) (Winter, J., dissenting) (analogizing nonparties' invocations of the privilege to hearsay evidence).

Mindful of this potential for inaccuracy and unfairness, other circuits have held that the admissibility of a nonparty's invocation of the Fifth Amendment privilege against self-incrimination and the concomitant drawing of adverse

inferences should be considered "on a case-by-case basis."  Cerro Gordo Charity v.

Fireman's Fund Am. Life Ins. Co., 819 F.2d 1471, 1481 (8th Cir. 1987); accord

LiButti v. United States, 107 F.3d 110, 123 (2d Cir. 1997); F.D.I.C., 45 F.3d at

978; Rad Servs., Inc. v. Aetna Cas. & Sur. Co., 808 F.2d 271, 277 (3d Cir. 1986).

A leading case on this issue is LiButti v. United States from the Second Circuit.

LiButti recognized, as we do here, that the "overarching concern" that should

guide the admissibility inquiry "is fundamentally whether the adverse inference is

trustworthy under all of the circumstances and will advance the search for the

truth."  107 F.3d at 124.  After surveying pertinent cases from the other circuits,

LiButti identified four non-exclusive factors for courts to consider: (1) "the nature

of the relevant relationships"; (2) "the degree of control of the party over the non-

party witness"; (3) "the compatibility of the interests of the party and non-party

witness in the outcome of the litigation"; and (4) "the role of the non-party witness

in the litigation."  Id. at 123–24 (capitalization altered).  LiButti made clear that

these factors should be applied flexibly and that an invocation is not barred even if

not all of the factors are satisfied.  See id.  We agree with and adopt the LiButti

analysis—i.e., that the admissibility of a nonparty's invocation of the Fifth

Amendment privilege and the concomitant drawing of adverse inferences should

be considered by courts on a case-by-case basis.  We also agree that LiButti's non-

16

exclusive factors should be applied flexibly and that the overarching concern is whether the adverse inference is trustworthy under all of the circumstances.

Applying LiButti to our case, we conclude that the district court did not abuse its discretion in allowing Coquina to call Spinosa to the stand for the purpose of having him invoke the Fifth Amendment privilege in the jury's presence.[9] Three of the four LiButti factors counsel in favor of the trustworthiness of the adverse inferences drawn against TD Bank based upon Spinosa's invocation.  First, although Spinosa was no longer employed by TD Bank at the time of trial, there is reason to believe that Spinosa still retained some loyalty to TD Bank.  The bank paid Spinosa's legal fees associated with this action.  See Rad Servs., 808 F.2d at 276 (stating that "[a]ny factors suggesting that a former employee retains some loyalty to his former employer—such as the fact that the employer is paying for his attorney"—serves the purpose of "reduc[ing] the chance that the employee will falsely claim to have engaged in criminal conduct for which the defendant employer is liable" (quoting Robert Heidt, The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062, 1119 n.214 (1982))).  Moreover, Spinosa's attorney had offered to cooperate in TD Bank's internal investigations on his behalf.  Second, the assertion of the privilege likely advanced

---

[9]     "The admissibility of a non-party's exercise of the Fifth Amendment against a party . . . is a legal question that we must review de novo.  Nevertheless, if such evidence is not inadmissible as a matter of law, the district court's specific determination of relevance and its evaluation of a potential Fed.R.Evid. 403 problem are reviewed for abuse of discretion." F.D.I.C., 45 F.3d at 977.

the interests of both Spinosa and TD Bank in the outcome of this litigation.  The chance is remote that Spinosa would have invoked the Fifth Amendment if he neither knew of nor participated in Rothstein's Ponzi scheme because doing so increased his own exposure to criminal prosecution.  And third, Spinosa is a "key figure" in this case because his alleged actions and misrepresentations formed the bulk of Coquina's complaint.  See Cerro Gordo Charity, 819 F.2d at 1482 (citing the invoking witness's role as a "key figure" in the lawsuit as a factor justifying the adverse inference).

Further, the record is replete with evidence that Spinosa, while acting as a regional vice president for TD Bank, knew of and participated in Rothstein's fraud.  The evidence shows that Spinosa signed "lock letters" falsely claiming that the money held in a TD Bank trust account could be disbursed only to Coquina.  Mel Klein and Kathleen White, two of Coquina's investors, testified that Spinosa falsely represented to them that the restriction described in the "lock letters" was both effective and commonplace at the bank.  Klein and White also testified that Spinosa told them that there were millions of dollars in the trust account when in fact there was only $100 in the account at the time.  Additionally, e-mails between Rothstein and Spinosa show that when Rothstein instructed Spinosa to "just answer yes to all [of Rothstein's] questions" in a conference call with Coquina's investors, Spinosa replied, "No problem."  The e-mails also indicate that when Rothstein

asked Spinosa to wire $16 million for him from RRA's accounts at TD Bank to Morocco, where Rothstein fled after his Ponzi scheme was discovered, Spinosa complied.

Under these circumstances, we have no difficulty concluding that the adverse inferences drawn against TD Bank based upon Spinosa's invocation of the Fifth Amendment privilege—namely, that while acting as TD Bank's regional vice president, Spinosa had knowledge of Rothstein's fraud and assisted in its perpetration—were "trustworthy." [10] LiButti, 107 F.3d at 124.  Accordingly, it was appropriate for the district court to allow Coquina to call Spinosa to the stand for the purpose of having him invoke the privilege in the jury's presence.[11]

---

[10]     The jury was instructed that "the knowledge and actions of a bank officer or director, such as" Spinosa, "may be imputed to a bank, such as" TD Bank.  TD Bank has not clearly challenged this instruction on appeal.  Consequently, we deem a trustworthy adverse inference as to Spinosa's knowledge and actions to be also trustworthy as to TD Bank's knowledge and actions.

[11]     It is of no moment that the district court had found before trial that the adverse inferences drawn against TD Bank based upon Spinosa's invocation of the Fifth Amendment privilege would be untrustworthy.  "[C]ourts are free to change their minds."  Johnson v. Hamrick, 196 F.3d 1216, 1223 (11th Cir. 1999).  Although we would prefer for the district court to have explained its decision to reconsider its prior ruling, we believe that the admissibility of Spinosa's invocations under the facts of this case is not a close enough question for us to require an explanation.  Cf. id. at 1223–24 (remanding in the different context of a bench trial involving voting rights issues because the district court did not provide sufficient justification for its reconsideration of a prior finding where the issue was "extremely close").

b. *Did the district court err in permitting Coquina to ask Spinosa questions not supported by independently admissible evidence?*

TD Bank further contends that the district court erred in allowing Coquina to ask Spinosa leading questions that were not corroborated by independent evidence in the record and in allowing the jury to draw adverse inferences from his refusal to respond to those questions. Specifically, TD Bank challenges several questions put to Spinosa that were based on inadmissible hearsay and information that Coquina's counsel received from the Trustee in violation of an order entered in the bankruptcy case.[12]

In contexts other than invocation of the Fifth Amendment, counsel may ask a question of a witness if he has a good-faith basis to ask it. Cf. United States v. Crutchfield, 26 F.3d 1098, 1102 (11th Cir. 1994). A good-faith basis does not have to be "definitive proof," United States v. Beck, 625 F.3d 410, 418 (7th Cir. 2010), and may be based on inadmissible evidence, see United States v. Tucker, 533 F.3d 711, 714–15 (8th Cir. 2008) (allowing the use of an out-of-court testimonial statement as a good-faith factual basis for a line of inquiry); cf. United States v. Guay, 108 F.3d 545, 552–53 (4th Cir. 1997) (concluding that "an official

---

[12] The questions include: "Mr. Spinosa, did Scott Rothstein give you a manila envelope filled with $50,000 cash . . . at the Bova Restaurant on Las Olas Boulevard in or around August of 2009?"; "Did Scott Rothstein approach you, in 2009, to make sure that the Weston branch manager, Rosanne Caretsky, was a quote, 'player,' who could be trusted in connection with his fraud scheme?"; "Did you tell Scott Rothstein that she was a player?"; and "[D]id you tell Scott Rothstein that he had your permission to sign your name when you were unavailable?"

investigative report, which was filed with the court under seal, . . . gave the prosecutor a good-faith basis for asking the questions").

The district court found that Coquina's counsel had a good-faith basis for the questions posed to Spinosa, and TD Bank does not challenge that finding on appeal. However, TD Bank argues that because Coquina's counsel knew that Spinosa would invoke the privilege against self-incrimination, Coquina's counsel could not ask leading questions in the jury's presence unless he could produce other independently admissible evidence that corroborated them. TD Bank relies heavily on a case from the Ninth Circuit, Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258 (9th Cir. 2000). In Doe, the plaintiff sought to introduce at trial the defendant's invocation of the Fifth Amendment privilege to support an adverse inference against the defendant. Id. at 1262. The Ninth Circuit held that an "adverse inference can only be drawn when" silence is countered by "independent evidence . . . of the fact to which the party refuses to answer." Id. at 1264. The court further stated that, because "the assertion of the privilege necessarily attaches only to the question being asked and the information sought by that particular question," each "specific fact being questioned" must be "corroborated by other evidence" in the record. Id. at 1265, 1266 n.2.

We need not decide whether to adopt Doe as the law of this Circuit; even assuming that the district court exceeded its discretion in allowing Coquina to ask

Spinosa a few questions that were not corroborated by independently admissible evidence and in authorizing the jury to draw adverse inferences therefrom, the error did not affect TD Bank's "substantial rights." <u>Collins</u>, 749 F.3d at 959. Both before the district court and on appeal, TD Bank identified only a handful of questions out of Spinosa's two-hour testimony that implicate this potential error.[13] <u>See</u> Appellant's Br. at 30–31; <u>see also</u> <u>supra</u> note 12. The questions relate to acts that Spinosa allegedly performed to assist Rothstein in his Ponzi scheme and benefits that Spinosa allegedly received in return. <u>See</u> <u>supra</u> note 12. Consequently, the only negative inferences that could have been obtained from Spinosa's refusal to answer those questions were that Spinosa committed those acts and received those benefits. The jury could have drawn similar adverse inferences from Spinosa's refusal to answer numerous other questions that were indisputably supported by independent corroborating evidence. Coquina's counsel asked Spinosa, <u>inter alia</u>: if he responded "no problem" after Rothstein told him to just "answer yes" to Rothstein's questions during a conference call with Coquina's investors; if he signed "lock letters" that misrepresented Rothstein's ability to transfer money from a TD Bank trust account designated for Coquina's benefit; if he made untrue statements to Coquina's investors about the restriction described in

---

[13]       "Neither the district court nor this court has an obligation to parse a . . . record to search out facts or evidence not brought to the court's attention. Notwithstanding this, we have reviewed sufficient portions of the record to give us comfort that able counsel have not overlooked significant evidence in their briefs to the district court and this court." <u>Atlanta Gas Light Co. v. UGI Utils., Inc.</u>, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006).

the "lock letters" and the amount of money that was in the purportedly restricted account; and if he sent a wire transfer of $16 million to Morocco at Rothstein's request. The jury could have inferred from Spinosa's silence in response to these questions that the answer in each case would have been "yes."

Because the only adverse inferences that could have been drawn from Spinosa's refusal to answer the questions implicating the alleged error were essentially duplicative of other questions amply supported by properly admitted evidence, any error by the district court in allowing Coquina to ask those questions and in authorizing the jury to draw negative inferences therefrom is harmless. Cf. Drew P. v. Clarke Cnty. Sch. Dist., 877 F.2d 927, 931–32 (11th Cir. 1989) (holding that the evidence at issue, "even if improperly admitted, w[as] merely cumulative of other evidence and therefore [its] admission was not reversible error"). We accordingly find no abuse of discretion in the district court's refusal to grant a new trial on this basis.

### 2. *The settlement agreement recital*

TD Bank's main defense at trial was that Coquina had waived its claims because its investors had actual or constructive knowledge that Rothstein's venture was fraudulent and yet continued to invest. Rothstein's "investments" promised returns of, for example, 37.5 percent in three months and 50 percent in four months

23

with little risk.[14]  TD Bank argued to the jury that Coquina's investors were

sophisticated investors who should have known that the investment terms were

simply "too good to be true."

Over TD Bank's objection, the district court admitted into evidence the

settlement agreement between Coquina and the Trustee.  The agreement stated in

pertinent part:

> [A]s a material inducement to entering into this Settlement, Coquina
> and its counsel have represented to the Trustee and his counsel that
> neither Coquina, nor its partners, [nor] investors . . . had any
> knowledge of the Rothstein Ponzi scheme . . . and that, as of the date
> of this Settlement Agreement, the Trustee has no knowledge to the
> contrary nor any indication of Coquina's knowledge of or complicity
> in or with the Rothstein Ponzi scheme.

TD Bank asked the district court to redact this recital from the copy of the

settlement agreement shown to the jury, arguing that it constituted inadmissible

hearsay and was unfairly prejudicial, but the district court declined.  Coquina does

not dispute on appeal that the recital was inadmissible hearsay but contends that its

admission was harmless.

We do not doubt that the recital had some prejudicial effect on TD Bank's

defense.  At the end of its rebuttal at closing, Coquina's counsel stated that TD

Bank was asking the jury to believe that Coquina should have known about

Rothstein's scheme.  Coquina's counsel then said:

---

[14]    According to TD Bank, the annualized rate of return for these "investments" ranged from
93.8 to 600 percent.

Case: 12-11161   Document: 170   Date Filed: 07/29/2014   Page: 25 of 41

> [I]f you look at the settlement agreement, you will see that . . . there is a denial that we had any knowledge of the Ponzi scheme in that document[,] and the settlement agreement that was entered into with the [T]rustee and approved by the bankruptcy court says that the [T]rustee had no knowledge or any indication of Coquina's knowledge of or complicity in or with the Rothstein Ponzi scheme.

This remark was one of the last things the jury heard before deliberating and called to the jury's attention the fact that, as part of the settlement with the Trustee, Coquina denied knowledge of the Ponzi scheme and the Trustee professed no knowledge or indication that Coquina's denial was untrue.

Some prejudice alone, however, does not require a new trial; "a new trial is warranted only where the [evidentiary] error has caused substantial prejudice to the affected party." Peat, 378 F.3d at 1162. To determine if improperly admitted evidence has caused "substantial prejudice," we look to, inter alia, the persuasive weight of the inadmissible evidence and the overall strength of the other evidence on the issues affected. See id. Several reasons persuade us in this case that this error did not cause substantial prejudice to TD Bank.

First, the recital contained merely an inference of innocence. The recital simply stated what Coquina had "represented to" the Trustee and what the Trustee professed to know at the time of the settlement agreement. It was only sparsely mentioned during the trial—just an isolated, albeit well-timed, reference toward the end of a two-hour closing argument. And it was patently self-serving on the part of both Coquina and the Trustee. We therefore do not believe that the recital

was likely to carry great weight with the jury, which heard mountains of evidence over a two-month period.

Second, the jury was expressly charged that argument of counsel is not evidence. The district court instructed the jury that "anything the lawyers say is not evidence in th[is] case" and that it is the jury's "own recollection and interpretation of the evidence that controls."

Finally, and most significantly, Coquina presented considerable other evidence that countered TD Bank's "too good to be true" defense. Coquina established that Rothstein's Ponzi scheme involved hundreds of victim investors, and it argued to the jury that "[y]ou can't have a fraud of that scope . . . and in the same breath call [the fraud] obvious." Coquina also introduced evidence showing that TD Bank knew about the terms of the "investments" that Rothstein offered, including annualized returns ranging from 200 to 500 percent. Coquina insisted to the jury that TD Bank could not have it both ways—it could not simultaneously argue that Coquina should have known the investment terms were "too good to be true" and that TD Bank had no reason to be suspicious of the same investments. Furthermore, Coquina introduced evidence demonstrating that it diligently investigated Rothstein's venture before investing. Coquina's investors testified that they sought confirmation from TD Bank on multiple occasions about the settlement money that Rothstein claimed was in a TD Bank trust account and about

the restrictions placed on Rothstein's ability to transfer money out of that account. Coquina presented evidence and argued to the jury that its investors had no reason to believe that the TD Bank employee with whom they spoke, Spinosa, was not telling the truth. Spinosa was, after all, TD Bank's regional vice president. Thus, after hearing Spinosa's assurances, the investors had no reason to be suspicious about the investments that Rothstein offered.

In light of the foregoing, we find that sufficient evidence untainted by any error supports the verdict and that the error therefore did not substantially influence the outcome of the case. Cf. Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order, 702 F.3d 1279, 1295–96 (11th Cir. 2012). We therefore conclude that, while the district court erred, such error does not warrant a new trial.

C. Damages

TD Bank next argues that the damages award should be vacated or reduced, or that a new trial on damages should be ordered. On damages issues, "we review de novo the district court's denial of a motion and renewed motion for judgment as a matter of law [while e]videntiary rulings are reviewed for abuse of discretion." Fla. Transp. Servs., Inc. v. Miami-Dade Cnty., 703 F.3d 1230, 1243 (11th Cir. 2012) (internal citation omitted), cert. denied, 134 S. Ct. 116 (2013).

1.  *Settlement payments to the Trustee*

TD Bank contends that the district court erred in allowing Coquina to claim as damages the amount it agreed to pay in settlement to the RRA estate.  We disagree.

Shortly before trial, Coquina and the Trustee entered into a settlement agreement under which Coquina agreed to pay the RRA estate $12.5 million upfront and to give the estate a portion of Coquina's recovery in this case, up to a maximum of $18.6 million.  The Trustee agreed in return to release all claims against Coquina or its investors.  At trial in this case, Coquina requested, and the jury awarded, $32 million in compensatory damages, $25 million of which was for settlement payments to the Trustee.[15]

In GAB Business Services., Inc. v. Syndicate 627, we held that a plaintiff seeking to claim as damages under Florida law the amount paid in settlement to a third party must first prove its "actual or potential liability" to that third party.  809 F.2d 755, 760–61 (11th Cir. 1987).  We required proof only of potential liability where the plaintiff informed the defendant of a proposed settlement and the defendant failed to object.  See id. at 760.  If, however, the defendant was not given an opportunity to review or participate in the settlement, we required "a demonstration of actual as opposed to potential liability."  Id.  In either case, we

---

[15]  The other approximately $7 million represented Coquina's actual losses (before the Trustee's "clawback") in Rothstein's Ponzi scheme—i.e., $6.7 million plus interest.

said, the plaintiff "could only recover so much of the settlement as it proved was
reasonable in amount . . . and a consequence of [the defendant's misconduct]."  Id.
at 761 (internal citation omitted).

TD Bank's counsel appeared at the settlement-approval hearing and did not
oppose the settlement, even though he had at least two opportunities to do so.
Because TD Bank "received adequate protection during the settlement
negotiations," Coquina needed to prove only its "potential liability" to the Trustee.
Id.  Coquina met this burden.  It produced evidence showing that it received $28.1
million from Rothstein within ninety days of RRA's bankruptcy filing.  This
amount is, of course, potentially avoidable and recoverable by a bankruptcy trustee
as a preferential transfer under 11 U.S.C. § 547.  See infra.

Coquina has also sufficiently demonstrated that the $25 million it sought and
successfully recovered from TD Bank—i.e., the amount Coquina asked the jury to
award that was attributable to the settlement with the Trustee—was "reasonable in
amount" and was "a consequence of" TD Bank's alleged misconduct.  GAB Bus.
Servs., 809 F.2d at 761.  "Whether a settlement is reasonable depends upon what a
reasonably prudent person in the position of the defendant [here, Coquina] would
have settled for on the merits of the plaintiff's [here, the Trustee's] claim," taking
into account factors such as "the extent of damages" and "the certainty of
liability."  Id. at 761 n.10 (internal quotation marks omitted).  Because circuit

courts have routinely allowed bankruptcy trustees to "claw back" and recover transfers made to investors of Ponzi schemes within ninety days of the filing of the bankruptcy petition, see, e.g., In re M & L Bus. Mach. Co., 84 F.3d 1330, 1339–40 (10th Cir. 1996); In re Bullion Reserve of N. Am., 836 F.2d 1214, 1216–19 (9th Cir. 1988), Coquina would almost certainly be liable to the Trustee for the entire $28.1 million that it received from Rothstein within ninety days of RRA's bankruptcy filing.  Coquina's decision to settle with the Trustee, and to seek from TD Bank $25 million in connection therewith, was therefore patently reasonable. Furthermore, the $25 million was clearly a loss to Coquina caused by TD Bank's tortious conduct.  It was approximately $3 million less than the $28.1 million that Rothstein had transferred to Coquina pursuant to the Ponzi scheme that TD Bank aided and abetted, which amount the Trustee could have fully "clawed back" from Coquina because it had been transferred within ninety days before RRA filed for bankruptcy.

For the foregoing reasons, Coquina has amply satisfied the requirement of GAB Business Services—i.e., that its settlement with the Trustee was pursuant to its potential liability to the Trustee, that its settlement was reasonable, and that the $25 million amount of the settlement that Coquina sought to recover from TD Bank was a loss to Coquina caused by TD Bank's aiding and abetting the Ponzi scheme.

Case: 12-11161  Document: 170  Date Filed: 07/29/2014  Page: 31 of 41

Against these points, TD Bank makes several arguments that we find

unpersuasive.  We reject as meritless TD Bank's first argument that Coquina failed

to show that its settlement payments to the Trustee constituted losses attributable to

TD Bank's misconduct.  The $25 million that Coquina was awarded in this case

was clearly attributable to the Trustee's claim "clawing back" and recovering for

the RRA estate the preferential transfers made by Rothstein to Coquina as part of

the Ponzi scheme.

Second, TD Bank asserts that the settlement amount was "inherently

unreasonable" because a portion of the settlement was conditioned on Coquina's

recovery in this case.  TD Bank has not cited, and our research has not found, any

case from Florida that addresses a similar situation involving a conditional

settlement like the one in this case.  Florida case law, however, shows beyond

doubt that "settlements are highly favored and will be enforced whenever

possible."  Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985); accord

Antar v. Seamiles, LLC, 994 So. 2d 439, 442 (Fla. Dist. Ct. App. 2008).  We

therefore conclude that it is unlikely that the Florida Supreme Court would adopt

the bright-line rule posited by TD Bank, given that an absolute bar against

indemnity for conditional settlements could "force [plaintiffs] to turn down

advantageous settlement offers."  Trs. of the Univ. of Pa. v. Lexington Ins. Co.,

815 F.2d 890, 901–02 (3d Cir. 1987) (applying Pennsylvania law and upholding

the validity of conditional settlements "subject to the requirements of good faith and reasonableness"); cf. Hitt v. Cox, 737 F.2d 421, 426 (4th Cir. 1984) (applying Virginia law and recognizing that parties negotiating the conditional portion of two-tiered settlements "no longer have adverse interests," but holding that conditional settlements are "presumptively," not inherently, unreasonable).

Third, TD Bank argues that Coquina's losses resulting from the settlement are too speculative to support an award of damages. TD Bank points out that, under the settlement agreement, Coquina has an allowed unsecured claim in the bankruptcy case for amounts paid pursuant to the settlement. In other words, at the time of trial, there was a possibility that some or all of the settlement payment from Coquina would be returned to Coquina by the RRA estate. It is true that a plaintiff cannot recover for losses that are speculative or uncertain. See Aldon Indus., Inc. v. Don Myers & Assocs., Inc., 517 F.2d 188, 191 (5th Cir. 1975) (applying Florida law).[16] But to our knowledge, no court has held that an amount of loss is speculative just because the loss resulted from the surrender of a preference and the injured party has an unsecured claim in the bankruptcy case for the property surrendered. We cannot conclude that this factor indicates that the damages awarded by the jury were speculative.

---

[16] The Eleventh Circuit in an en banc decision, Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

We therefore conclude that the district court properly permitted Coquina to claim as damages the amount that it paid—and will pay upon prevailing in this case—in settlement to the RRA estate.  The evidence sufficiently established that the $25 million that Coquina sought, and that the jury awarded, in connection with the settlement was reasonable in amount and was attributable to TD Bank's alleged misconduct.  We note, however, that post-trial developments suggest that: (1) the RRA estate has returned a substantial portion of the $12.5 million that Coquina had already paid pursuant to the settlement; (2) the balance of the $12.5 million will likely be returned to Coquina in the near future; and (3) the portion of Coquina's recovery from this case that the estate would receive under the settlement may also be returned.  Consequently, there is the possibility of a double recovery by Coquina—recovering $25 million from TD Bank as damages in this case and receiving $25 million from the RRA estate from the unsecured claim in the bankruptcy case.  There is already a Rule 60(b) motion pending in the district court raising the issue of whether the damage award should be reduced in light of these post-trial developments.  We believe that the Rule 60(b) proceeding is the proper vehicle for resolving this and related issues.  If the district court determines that a reduction in compensatory damages is appropriate, the court should also consider whether a proportionate reduction of punitive damages is required.

2. *TD Bank's remaining arguments*

We summarily reject TD Bank's remaining arguments concerning the

damages award.  We perceive no abuse of discretion in the district court's rulings

on discovery, evidentiary, and jury-instruction issues in connection with the

reasonableness of the settlement amount.  We also reject TD Bank's argument that

the jury award reflected duplicative damages.  We agree with the district court that,

in light of the instructions to the jury, the verdict form, and the evidence, it is clear

that the jury intended a total of $32 million in compensatory damages and $35

million in punitive damages.

### D. Sanctions

Finally, TD Bank contends that the sanction ordered by the district court was

based on clearly erroneous findings of fact and violated due process.  As explained

above, the district court ordered two facts—that TD Bank's monitoring and alert

systems were unreasonable and that TD Bank had actual knowledge of Rothstein's

fraud—be taken as established for purposes of this action.

Federal Rule of Civil Procedure 37(b) provides that a district court may

impose sanctions upon a party for failure to comply with a discovery order,

including "directing that . . . designated facts be taken as established for purposes

of the action."  Fed. R. Civ. P. 37(b)(2)(A)(i).  "Our caselaw is clear that only in a

case where the court imposes the most severe sanction—default or dismissal—is a

finding of willfulness or bad faith failure to comply necessary."  BankAtlantic v.

<u>Blythe Eastman Paine Webber, Inc.</u>, 12 F.3d 1045, 1049 (11th Cir. 1994). In this case, the district court found that TD Bank's discovery violations were willful, but this finding was not necessary to the sanction that the court chose to impose. TD Bank nevertheless maintains that the district court's finding of willfulness was clearly erroneous and that but for this finding, the court would have selected a less severe sanction.

Significantly, TD Bank is not arguing that the district court erred in imposing sanctions at all. Nor would such an argument be tenable. The district court's order granting the motions for sanctions provides numerous examples of troubling—perhaps even willful—discovery violations by TD Bank and its employees. For example, two TD Bank employees apparently failed to reasonably search for a document in the relevant shared drive before signing affidavits denying the document's existence. As another example, TD Bank's Rule 30(b)(6) designee was, at best, woefully unprepared: he testified that there were no AML alerts for Rothstein's bank accounts until late September 2009 and less than five thereafter, when in fact, there were at least 150 pages of alerts spanning 2008 to 2009.

TD Bank instead argues that the district court erred in imposing this particular sanction—that is, deeming as established TD Bank's actual knowledge of the fraud and the unreasonableness of its account-monitoring systems. This is

not, however, an issue that we have to decide. Wholly aside from the sanction, both facts are in any event established by ample evidence in the record. Therefore, there is no need for those facts to be established as a sanction. In light of our earlier conclusion that the evidence in the record overwhelmingly supports the conclusion that TD Bank, through Spinosa, knew of Rothstein's Ponzi scheme, see supra Part II.B.1, any error in the district court's decision to impose the sanction that it chose, or in its predicate finding of willfulness, is harmless.[17]

Although we need not, and do not, address the correctness vel non of the district court's findings with respect to the sanctions issue, we do believe that the district court clearly erred in at least one subsidiary finding: that "TD Bank acted willfully in failing to rectify Greenberg Traurig's error [as to the production of the CDD] or allowing it to endure." The CDD was one of thousands of documents TD Bank produced in this litigation. Unlike the district court, we see nothing

---

[17]     TD Bank in fact states on appeal that the "'reasonableness' of [its] monitoring systems was legally irrelevant to Coquina's claims at trial . . . [and thus that part of the sanction] did not even directly relate to . . . issues properly in dispute at trial." Appellant's Br. at 62 (emphasis in original). A sanction establishing an "irrelevant" fact as conclusively proven, even if erroneously ordered, is doubtlessly harmless.

        We note that TD Bank does not contend that it was impeded by the sanctions order from effectively arguing that the evidence in the record was insufficient to support a conclusion that Spinosa, and therefore TD Bank, knew about and assisted Rothstein's Ponzi scheme. Moreover, even if this argument had been raised, we would conclude that it has no merit under the circumstances of this case. TD Bank challenged the sanctions order and thus could have made arguments on appeal, conditioned on our reversal of the sanctions order, challenging the facts that the sanctions order deemed established. Of course, such a challenge would have been futile in light of the overwhelming evidence that Spinosa, and thus TD Bank, had knowledge of the Ponzi scheme.

Case: 12-11161    Document: 170    Date Filed: 07/29/2014    Page: 37 of 41

incredible or implausible in the explanation that neither TD Bank's in-house lawyers nor its representatives who were present at trial knew what the CDD was supposed to look like. Therefore, we cannot conclude on this record that the TD Bank representatives present at trial would necessarily have had reason to notice that the copy of the CDD introduced at trial was missing important details. In our judgment, however, for the reasons already stated, this error and any other deficiencies in the district court's findings do not warrant reversing the sanction imposed in this case.[18]

### E. Coquina's cross-claim

Coquina cross-appeals on a single ground: that the district court erred by denying its motion to amend its complaint to better plead a RICO claim. We review a district court's denial of a motion to amend a complaint for abuse of discretion. Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013). We have observed that "though leave to amend is freely given when justice so requires," a district court may "deny such leave where there is substantial ground for doing so, such as undue delay . . . and futility of amendment." Reese v.

---

[18] We summarily reject TD Bank's argument that the sanction imposed by the district court violated due process because the sanction was not specifically related to the alleged discovery violations. The documents that were improperly produced in this case could have been used by Coquina to show that TD Bank willfully ignored the AML alerts and other risk indicators generated for Rothstein's accounts. A jury could have inferred from those documents both that TD Bank had knowledge of Rothstein's fraud and that it had unreasonable systems in place to prevent fraud.

Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008) (internal alternation and quotation marks omitted).

A brief chronology of events puts this issue in proper perspective. Coquina alleged in its complaint that TD Bank had "engaged in a pattern of related and continuous [RICO] predicate acts over a substantial, but <u>closed</u>, period of time."[19] TD Bank moved to dismiss the RICO claim, arguing in part that Coquina had failed to sufficiently plead a closed-ended pattern of racketeering activity and thus could not satisfy RICO's continuity requirement. The district court denied TD Bank's motion to dismiss, finding sufficient Coquina's allegation that an enterprise extending over a period of four years existed.

In May 2011, TD Bank moved for summary judgment on the RICO claim, arguing again that Coquina had failed to prove a closed-ended pattern of racketeering activity. TD Bank contended that the RICO predicate acts alleged by Coquina occurred over too short a time period to establish closed-ended continuity. To support this assertion, TD Bank cited <u>Jackson v. BellSouth Telecommunications</u>, 372 F.3d 1250 (11th Cir. 2004), in which we explained that the relevant period is the time during which "the specific incidents . . . actually

---

[19]    RICO's continuity requirement can be satisfied either by showing a "closed-ended" pattern of racketeering activity—<u>i.e.</u>, "a series of related predicates extending over a substantial period of time"—or by proving an "open-ended" pattern of racketeering activity—<u>i.e.</u>, predicate acts that "include a specific threat of repetition extending indefinitely into the future" or that "are part of an ongoing entity's regular way of doing business." <u>Jackson v. BellSouth Telecommunications</u>, 372 F.3d 1250, 1265 (11th Cir. 2004) (internal quotation marks omitted).

charged" occurred and held that "nine months is not an adequately substantial period of time" for closed-ended continuity. Id. at 1266–67. TD Bank also cited a decision from the Second Circuit, Spool v. World Child Int'l Adoption Agency, 520 F.3d 178 (2d Cir. 2008), which held that "[t]he relevant period . . . is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." Id. at 184.

In its response brief to the district court, Coquina disputed that the relevant period for determining continuity is the time during which the alleged predicate activity—i.e., the alleged acts of fraud against Coquina—occurred, claiming instead that continuity should be "evaluated in the context of the entire fraud involving TD Bank," including acts of fraud against other Rothstein investors in prior years. Coquina also argued, in the alternative, that it could demonstrate continuity by proving an open-ended pattern of racketeering activity. TD Bank then pointed out in its reply brief that open-ended continuity was a new theory that had not been pled.

Coquina was therefore on notice by June 2011, when TD Bank filed its reply brief, that several cases, including a case from the Eleventh Circuit, indicate that the relevant period for determining continuity is not the time during which the underlying scheme operated, but rather the time during which "the specific incidents . . . actually charged" occurred. Jackson, 372 F.3d at 1266. Accordingly,

Coquina was on notice by then that its closed-ended continuity theory, which was based on predicate acts spanning only five months, may have been untenable. And significantly, Coquina was also on notice by June 2011 that it had not pled open-ended continuity. Coquina nevertheless did not move to amend its complaint to add an open-ended pattern of racketeering activity at that time. Instead it sought to do so only after the district court granted summary judgment in favor of TD Bank on the RICO claim four months later. Coquina's motion to amend its complaint also came immediately before trial.

Because Coquina should have known by June 2011 that its closed-ended continuity theory might be untenable and that it had not pled an open-ended pattern of racketeering activity, we agree with the district court that Coquina's motion to amend, filed four months later, was unduly delayed. Coquina claims that it was surprised by the district court's summary judgment ruling because the court had treated the four years during which Rothstein's Ponzi scheme operated as the relevant time for determining continuity at the motion-to-dismiss stage. This assertion rings hollow. Coquina had notice by June 2011 that the motion-to-dismiss order's focus on the period during which Rothstein's fraud operated, instead of the period during which the alleged predicate acts of fraud against Coquina occurred, was inconsistent with case law from our and other circuits.

Consequently, it should have known that it could not rely on the district court's ruling in that regard.

Having carefully reviewed the parties' briefs and the relevant record, we conclude that Coquina has not shown good cause for not seeking to plead an open-ended pattern of racketeering activity sooner.  We therefore find no abuse of discretion in the district court's denial of Coquina's motion to amend.[20]

### III.    CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.[21]

---

[20]    Coquina also sought in its motion to amend to bolster its RICO claim by supplementing its factual allegations relating to the benefits TD Bank derived from Rothstein's scheme.  This proposed amendment would have been futile given our conclusion that the district court acted within its discretion in denying Coquina leave to add an open-ended pattern of racketeering activity because Coquina's RICO claim would still fail for failure to prove closed-ended continuity.  Accordingly, the district court did not abuse its discretion in denying Coquina leave to add the additional factual allegations.

[21]    Other arguments raised by the parties are rejected without need for discussion.